IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LINDA FARRALL,

        Plaintiff,

    v.

MATHEW J. ROLOFF; AMY J. ROLOFF;
and ROLOFF FAMILY FARMS,

        Defendants.

No. 03:11-cv-01255-HZ

OPINION & ORDER

Robert C. Kline Jr.
KLINE LAW OFFICES PC
820 SW Second Avenue, Suite 200
Portland, OR 97204
Shawn B. Briggs
BRIGGS & BRIGGS
10222 Gravelly Lake Drive SW
Lakewood, WA 98499

    Attorneys for Plaintiff

1 - OPINION & ORDER

Richard J. Whittemore
Evelyn E. Winters
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204-2089

    Attorneys for Defendants

HERNANDEZ, District Judge:

This is a personal injury case involving claims of negligence and negligence per se. Defendants Amy Roloff, Mathew Roloff, and Roloff Family Farms move for partial summary judgment against plaintiff Linda Farrall's claim for punitive damages. Mathew and Amy Roloff own Roloff Farms in Washington County, Oregon. Plaintiff Linda Farrall fell in the picnic pavilion at Roloff Farms in October of 2009, severely injuring her left leg. Defendants argue that because the County allowed public occupancy of the picnic pavilion and because plaintiff's injury was not caused by any structural issue with the picnic pavilion, they cannot be liable for punitive damages. However, when viewing the facts in a light most favorable to the non-moving party, a reasonable juror could find that Washington County had not approved of public occupancy and that plaintiff's injury was either caused or exacerbated by the safety issues the County communicated to the Roloffs. Therefore, I deny the motion.

## BACKGROUND

I.    Roloff Farms

Roloff Farms is open to the public from the end of September until the end of October every year during pumpkin season. Ex. B to Kline Decl. (Chandler Dep.) at 10:23-11:2. Each year Roloff Farms attracts approximately 30,000 visitors. Ex. A to Kline Decl. (M. Roloff Dep.) ("M. Roloff Dep. / Kline Decl.") at 75:9-17. Roloff Farms contains a you-pick pumpkin patch, multi-story tree house, western town complex, mine shaft, soccer field, underground tunnel,

pumpkin catapult, pirate ship, castle complex, covered bridge, mercantile building,[1] and picnic pavilion.[2] Am. Compl. ¶ 4.

The building at issue is the picnic pavilion, an open-air, covered structure with picnic tables. Ex. B to Winters Decl. (Farrall Dep.) ("Farrall Dep. / Winters Decl.") at Exs. 1, 3, 5, 6, & 7 (photos of the picnic pavilion); *see also* Farrall Dep. / Winters Decl. at 94:1. The Roloffs constructed the picnic pavilion to provide shelter from the rain during pumpkin season. Ex. A to Winters Decl. (M. Roloff Dep.) at 33:25-34:9. Mr. Roloff conceived the structure of the picnic pavilion using "cocktail napkin" or "back of the envelope" designs. M. Roloff Dep. / Kline Decl. at 38:23-39:3. After building the picnic pavilion, Mr. Roloff hired Kevin Clemo, an engineer, to perform engineering load calculations. *Id.* at 39:14-20. The Roloffs constructed the picnic pavilion as an agriculturally exempt structure, not subject to occupancy permitting requirements. Ex. C to Kline Decl. (McAllister Dep.) ("McAllister Dep. / Kline Decl.") at 107:17-108:8.

II.     Communications between Roloffs and Washington County Officials

On June 5, 2009, Washington County's Building Services Division sent a letter to the Roloffs stating that the County had "received a number of complaints and [had] evidence of Building Code violations" on the property. Ex. D to Kline Decl. John McAllister, Washington County's building official who is responsible for all building permits in Washington County, wrote the letter and stated that "construction which requires building permits appears to have occurred and I can find no record of permits for that work." *Id.* McAllister's letter additionally discussed that while several buildings were constructed with "agricultural exempt placement

---

[1] The mercantile building is also referred to as the merchandising building, retail building, country store, pumpkin barn, and pumpkin storage building. I refer to this building as the "mercantile building."

[2] The picnic pavilion is also referred to as the picnic shelter, shelter building, pumpkin shelter building, and pumpkin pavilion. I refer to this building as the "picnic pavilion."

3 - OPINION & ORDER

permits," the public seemed to be using the buildings. *Id.* This public use would be in violation of the building code. *Id.* McAllister stated that the "structures require building permits or must be closed to the public." *Id.*

Washington County sent another letter to the Roloffs, dated September 24, 2009, which was signed by Nadine Smith Cook.[3] Ex. F to Kline Decl. Cook was McAllister's supervisor and Washington County's Interim Manager of Planning and Buildings. The letter stated, "[o]ur understanding is that you have agreed to enter into a compliance agreement concerning the bridge, the picnic pavilion, and the merchandising building." *Id.* at 1. Further, "[t]he compliance agreement provides that you will allow no public access to or on the structures . . . until such time as you obtain all required building, electrical, and similar permits and approved final inspections." *Id.* Additionally, the letter warned that evidence of use by the public would result in action by the County Counsel seeking "an immediate temporary restraining order and preliminary injunction to protect the public's health and safety." *Id.* at 1-2. The Roloffs had to sign and return the compliance agreement by October 8, 2009. *Id.* at 2. Apparently, the Roloffs never signed the compliance agreement. M. Roloff Dep. / Kline Decl. at 80:16-24.

On September 29, 2009, Cook wrote a follow-up email to the following people: (1) Dan Olsen, an employee of Washington County; (2) McAllister; (3) Dorothy Cofield, the Roloffs' land-use attorney; and (4) Caryn Chandler, the Roloffs' employee. Ex. E. to Winters Decl. The email stated, "[w]e need to be able to review how structural and electrical issues have been addressed in the plans to be able to approve an agreement to allow occupancy of the two ag [agricultural] buildings." *Id.* On October 1, 2009, Olsen sent an email to Cook and McAllister, stating that "the County will not seek to halt access to those 2 structures [the picnic pavilion and

---

[3] The byline on the letter is under McAllister's name, but the letter was signed by Cook.

mercantile building] provided Mr. Roloff is in the process of getting permits and final inspections." Ex. F to Winters Decl.

The Roloffs submitted plans for the picnic pavilion and mercantile building on October 1, 2009. Ex. H to Winters Decl. Edward Jones, a County plans examiner, reviewed the application materials. Ex. H to Kline Decl. (Jones Dep.) at 39:6-24. Jones stated that missing from the application materials was "[e]verything pretty much." *Id.* at 39:17. The plans submitted were "very minimal." *Id.* at 39:18. McAllister testified that there is a procedure for obtaining temporary public use and occupancy for a building, but this would only be granted when there is an open permit. McAllister Dep. / Kline Decl. at 133:21-134:2. McAllister stated the Roloffs submitted an incomplete application, and the County never received an adequate design to review for the picnic pavilion. *Id.* at 135:19-136:11. Thus, McAllister testified the County never permitted temporary public occupancy of the picnic pavilion. *Id.* at 139:12-14.

III.  Site Inspection of Roloff Farms by Washington County Officials

McAllister, Cook, and Washington County Engineer Kofi Nelson-Owusu performed a site inspection of Roloff Farms on October 1, 2009. McAllister noted "probable code violations" based on visual observations of the picnic pavilion. Ex. O to Suppl. Winters Decl. (McAllister Dep.) ("McAllister Dep. / Suppl. Winters Decl.") at 81:4-6. He also observed pedestrian and safety hazards in the building, including "[s]tep-ups into the building from unlevel surfaces within the building" and uneven floorboards. *Id.* at 159:17-160:22.

The inspection was filmed and aired in an episode of the Roloffs' reality television show, *Little People, Big World*, entitled "Clash with the County."[4] Ex. G to Winters Decl. The episode

---

[4] Plaintiff objects to the use of the episode as an exhibit. The issue does not need to be resolved at this time, because even considering the contents of the episode, I deny the motion for partial summary judgment.

5 - OPINION & ORDER

depicts McAllister at Roloff Farms talking with Clemo, who was off-site, over the phone. McAllister states "[w]hat we're going to look for would be a letter statement that these structures are sound and safe during this interim period." Ex. G to Winters Decl. Clemo responds "I'll have that letter down there for you guys first thing in the morning. Get a temporary occupancy and use of the facility[.]"[5] *Id.* McAllister testified that by "interim period" he meant pumpkin season, an approximately thirty-day period. McAllister Dep. / Kline Decl. at 63:14-18. Further, McAllister testified that his reference to "these structures" in the episode referred to the picnic pavilion and the mercantile building. *Id.* at 75:15-25.

The episode also shows Mr. Roloff exclaiming at the end, that they were "open for business." Ex. G to Winters Decl. Cook later testified that while Mr. Roloff made this statement and the Roloffs were allowed to "open for business," it was not her choice to decide if this meant allowing people inside of the picnic pavilion. Ex. J to Winters Decl. (Cook Dep.) at 47:4-6.[6]

McAllister testified that the "Clash with the County" episode did not accurately depict the discussion that took place during the site visit on October 1, 2009. Ex. K to Winters Decl. (McAllister Dep.) at 72:12-22, 73:16-24. McAllister testified the episode left out a discussion about "the Retail/Mercantile Building as being a structure that could be occupied." *Id.* at 74:20-75:2. Additionally, McAllister testified the episode left out discussions about the picnic pavilion as "not being okay to occupy." *Id.* at 74:20-24. The picnic pavilion was not suitable for public visitors, because there was "[t]oo much work to be done in terms of [the] structural elements." McAllister Dep. / Suppl. Winters Decl. at 112:21-113:13. The alleged building code compliance

---

[5] This phone conversation is difficult to hear in the episode and is a direct quotation from the episode's subtitles.
[6] Cook had no authority to reverse or veto a decision made by McAllister because McAllister is the official authorized to approve building permits. McAllister Dep. / Suppl. Winters Decl. at 13:21-14:10.

issues included a lack of hand railings, stair riser deviations, and raised floorboard edges. Am. Compl. ¶ 7.

In response to a deposition question about whether he allowed temporary occupancy of the picnic pavilion, McAllister responded that the issue was "specifically" discussed during the site visit. McAllister Dep. / Kline Decl. at 137:16-20. Further, McAllister testified that he left the site visit with the "impression that Mr. Roloff understood that the County was not allowing temporary public occupancy" of the picnic pavilion, *id.* at 138:16-21, and "with a clear understanding that they would not occupy that building," *id.* at 113:14-18.

Mr. Roloff testified that he understood that the County had granted a temporary occupancy permit for the public to enter the picnic pavilion. M. Roloff Decl. ¶ 4. This understanding was a result of his discussions with Cook, Owusu, and McAllister. *Id.* Additionally, Mr. Roloff testified that he understood that after Mr. Clemo submitted letters certifying that the picnic pavilion was structurally sound, the Roloffs would have permission to open the picnic pavilion for the 2009 pumpkin season. *Id.* ¶ 5. Mr. Roloff stated that there was no separate agreement with the County to allow public occupancy of the mercantile building and not the picnic pavilion. *Id.* ¶ 6.

Clemo states that during McAllister's site visit he agreed to provide McAllister with a letter regarding the picnic pavilion and mercantile building, certifying that each building was structurally sound. Clemo Decl. ¶ 5. On October 2, 2009, Clemo submitted a separate letter for each structure. Ex. I to Winters Decl. In McAllister's deposition testimony, he states that the letters from Clemo did not permit public access to the picnic pavilion. McAllister Dep. / Kline Decl. at 133:11-134:2, 137:13-15.

IV.   Plaintiff's Fall

On October 23, 2009, plaintiff traveled from her home in Washington to Roloff Farms on a tour bus operated by Discovery Tours. After arriving at Roloff Farms, plaintiff went to the picnic pavilion and sat at a picnic bench on the pavilion's upper level. Farrall Dep. / Winters Decl. at 109:7-23, 114:9-12. After an announcement that the Discovery Tours guests' lunches were ready to be picked up outside the picnic pavilion, plaintiff stood up to get her lunch. *Id.* at 117:8-18. Plaintiff walked through the picnic pavilion and down the step to the floor level of the pavilion. *Id.* at 121:9-122:3. Another guest bumped plaintiff from behind. *Id.* at 127:4-5. Plaintiff began "tripping all the way down to the end and kind of running, tripping, walking." *Id.* at 127:9-10. As she was falling, plaintiff had nothing to grab onto. *Id.* at 122:13-16. She stumbled forward in the pavilion and eventually fell to the ground. *Id.*

As a result of the accident, plaintiff suffered a non-union fracture on her left femur. Am. Compl. ¶ 12(B). Plaintiff claims she has had seven surgeries related to her fall at Roloff Farms. *Id.* She remains unable to bear any weight on her left leg, and if her eighth surgery is unsuccessful, her leg may need to be amputated. *Id.*

## STANDARDS

I.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex*, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Long v. City & County of Honolulu*, 511 F.3d 901, 905 (9th Cir. 2007). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

II.     Punitive Damages Standard

In Oregon, punitive damages are recoverable in a civil action only when "clear and convincing evidence" demonstrates that the party charged with punitive damages "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." Or. Rev. Stat. § 31.730(1). To satisfy the "clear and convincing" evidence standard, "the truth of the facts asserted [must be] highly probable." *Simpson v. Burrows*, 90 F. Supp. 2d 1108, 1130 (D. Or. 2000). "Malice" is the "intentional doing of [an] injurious act without justification or excuse."

*Johannesen v. Salem Hosp.*, 336 Or. 211, 217, 82 P.3d 139, 141 (2003). The "imposition of punitive damages [requires] a degree of culpability greater than inattention or simple negligence." *Thompson ex rel. Thorp Family Charitable Remainder Unitrust v. Federico*, 324 F. Supp. 2d 1152, 1170 (D. Or. 2004).

DISCUSSION

If the evidence shows that the Roloffs were warned that conditions in the picnic pavilion could pose a risk to the public, and if the Roloffs nevertheless allowed the public into the picnic pavilion without permission from the County, a reasonable juror could conclude by clear and convincing evidence that the Roloffs acted "with a conscious indifference to the health, safety and welfare of others." Therefore, whether the Roloffs had permission from the County for public access and had warnings of potential safety issues are relevant issues in deciding this motion.

I.      Permission to Allow Public Occupancy

Summary judgment is improper because in looking at the evidence in the light most favorable to the plaintiff, the County did not grant permission to allow the public into the picnic pavilion. McAllister remembers a conversation with the Roloffs beyond that depicted in "Clash with the County." McAllister remembers telling Mr. Roloff that public access was permitted in the mercantile building but not the picnic pavilion. Further, McAllister remembers the conversation specifically drawing attention to building code compliance issues as being the reason the picnic pavilion was not open to the public.

Defendants argue that McAllister's deposition testimony should be disregarded and cannot create an issue of fact because it conflicts with the record and was taken years after the events took place. However, these arguments go to the weight of McAllister's testimony. This is

fundamentally a credibility determination which is reserved for the trier of fact. Based on the conflicting testimony, there remains a genuine dispute as to whether the County granted the Roloffs permission to allow the public into the picnic pavilion. This dispute must be resolved in favor of plaintiff, the non-moving party.

II.     The County's Warnings and Plaintiff's Injury

The County called the Roloffs' attention to possible safety concerns in the picnic pavilion in the June 5, 2009 letter informing the Roloffs of complaints and evidence of building code violations. The County further brought this concern to the Roloffs' attention in the September 24, 2009 letter warning that the public should not be admitted into the structure until after obtaining all required permits and approved final inspections. The September 29, 2009 follow-up email requesting information on how the Roloffs had addressed structural and electrical issues also raised safety issues. Additionally, McAllister testified he communicated with Mr. Roloff during the October 1, 2009 site inspection that the public was not allowed into the picnic pavilion but was allowed into the mercantile building. McAllister testified that he saw pedestrian and safety hazards in the picnic pavilion. The Roloffs were put on notice of these hazards when McAllister allowed the mercantile building but not the picnic pavilion to be open to the public.

Through the letters, email, and in-person conversation with McAllister, the County warned the Roloffs of general safety concerns in the picnic pavilion. McAllister's testimony is somewhat unclear on whether he communicated specific code violations to the Roloffs during the October 1, 2009 site inspection. Nonetheless, construing the evidence in a light most favorable to plaintiff, the warnings were enough to put the Roloffs on notice that someone might get hurt if the building code violations were not addressed. While plaintiff's fall was initiated by a bump, the undisputed testimony in summary judgment is that there were no handrails where

plaintiff fell. Plaintiff's testimony regarding tripping, stumbling, and finding nothing to hold onto shows that the presence of a handrail might have prevented her injury. This is the type of building code issue the County warned the Roloffs needed attention before the structure was opened to the public. A reasonable trier of fact could find that the County warned the Roloffs of issues that led to or exacerbated the plaintiff's injury and could conclude that the Roloffs acted "with a conscious indifference to the health, safety and welfare of others" by nevertheless allowing the public into the picnic pavilion.[7]

CONCLUSION

Defendants' motion for partial summary judgment [#44] is denied.

IT IS SO ORDERED.

Dated this 11 day of March, 2013.

_____
MARCO HERNANDEZ
United States District Judge

---

[7] Given my ruling, I do not address either party's alternative arguments, including defendants' objections to the Declarations of Pruett and Ostoj.

12 - OPINION & ORDER